1
2
3
4                                              E-FILED on ___11/8/10___
5
6
7
8              IN THE UNITED STATES DISTRICT COURT
9            FOR THE NORTHERN DISTRICT OF CALIFORNIA
10                      SAN JOSE DIVISION
11

| | |
|---|---|
| FORTINET, INC., | No. C-09-00036 RMW |
| Plaintiff, | |
| | ORDER CONSTRUING CLAIMS OF THE |
| v. | '990 PATENT, GRANTING PAN'S MOTION |
| | FOR SUMMARY JUDGMENT OF NON- |
| PALO ALTO NETWORKS, INC., | INFRINGEMENT, AND DENYING PAN'S |
| | MOTION FOR SUMMARY JUDGMENT OF |
| Defendants. | INVALIDITY |
| | |
| | **[Re Docket Nos. 64, 67, 75]** |

United States District Court
For the Northern District of California

        Fortinet, Inc. ("Fortinet") alleges that Palo Alto Networks, Inc. ("PAN")'s firewall products

infringe claims 1, 3, 5, 10 to 15, 17, 18, 32, 33, 36, 37, 40, 41, 44, and 45 of United States Patent No.

7,519,990 ("'990 Patent"). The parties seek construction of claim language in the '990 Patent. PAN

moves for summary judgment that the accused products do not infringe the asserted claims of the

'990 Patent and that the asserted claims of the '990 Patent are invalid. The court held a tutorial and

claim construction hearing on July 20, 2010. After consideration of the claims, specification,

prosecution history, and other relevant evidence, and after hearing the argument of the parties, the

court construes the disputed claim language in the '990 Patent as set forth below. In addition, for the

1  reasons set forth below, the court grants the motion for summary judgment of non-infringement and

2  denies the motion for summary judgment of invalidity.

## I. BACKGROUND

4        This case deals with firewall technology.  Firewalls control network traffic traveling between

5  networks or zones of different trust levels, such as between the Internet and a local area network

6  ("LAN").  Dkt. No. 146 ¶ 12.  In order to protect a LAN from undesirable content, such as viruses

7  and spam, firewalls analyze incoming and outgoing network traffic.  *Id.* ¶ 15.  Network traffic

8  consists of packets of data.  A data packet has seven protocol layers: the physical layer (L1), data

9  link layer (L2), network layer (L3), transport layer (L4), session layer (L5), presentation layer (L6),

10  and application layer (L7).  *Id.* ¶ 17.  TCP and UDP are common transport layer protocols.  *Id.* ¶ 23.

11  IP is an example of a network layer protocol, and Ethernet is an example of a data link layer

12  protocol.  *Id.* ¶ 21.  Each layer has a header that contains information identifying the protocol of the

13  next higher layer.  *Id.* ¶ 19.  Based on this header information and an inspection of the packet to see

14  if it conforms with the required packet format for a protocol, a firewall can determine the protocols

15  used to enclose a data packet.  *See id.* ¶ 19.

16        The '990 Patent teaches a system and method for analyzing the content of computer and

17  network traffic using two processors.  The first processor receives network content and determines

18  whether the protocol of the network traffic matches a prescribed protocol that may contain content

19  sought to be detected.  If there is not a match, the first processor filters the network content itself.  If

20  the protocol matches the prescribed protocol, the first processor stores the network content in a stack

21  for content inspection by the second processor.  The second processor then determines whether the

22  network traffic content stored in the stack contains content sought to be detected.  For illustrative

23  purposes, claim 1 of the '990 Patent is set forth below:

24        A device for managing network traffic flow, the device comprising:
             a first processor, the first processor configured to
25               receive network traffic content,
             determine whether a protocol of the network traffic content matches a
26               prescribed protocol of network traffic content that could contain content
                 desired to be detected by comparing a type of the network traffic content
27               with a prescribed type,
             store the network traffic content in a stack when the protocol of the
28               network traffic content matches the prescribed protocol, and

perform filtering of the network traffic if the type of the network traffic
content does not match the prescribed type; and

a second processor associated with the stack, wherein the second processor is
configured to determine whether the network traffic content contains the
content desired to be detected if the type of the network traffic content matches
the prescribed type.

'990 Patent 23:24-43.

The accused products are PAN's PA-4000 Series, PA-2000 Series, and PA-500 Series
Firewalls. ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████

## II. CLAIM CONSTRUCTION

The parties agree that a "stack" refers to memory for temporary storage.  They seek

construction of the terms in bold in the following claim language:

determine[1] whether a protocol of the network traffic matches **a prescribed protocol
of network traffic content that could contain content desired to be detected** by
comparing a type of the network traffic content with a prescribed type, . . .

store[2] the network traffic content in a stack when the protocol of the network traffic
content matches **the prescribed protocol** . . . .

'990 Patent 23:27-35 (claim 1), 24:17-27 (claim 15).  Their proposed constructions for the disputed

claim terms are set forth below:

| CLAIM LANGUAGE | FORTINET'S PROPOSED CONSTRUCTION | PAN'S PROPOSED CONSTRUCTION |
|---|---|---|
| "a prescribed protocol of network traffic content that could contain content desired to be detected" | A recognized protocol of network traffic content that could contain content desired to be detected. | Any protocol that has been pre-identified as potentially containing content desired to be detected. |

[1] "Determining" in claim 15.

[2] "Storing" in claim 15.

United States District Court
For the Northern District of California

| CLAIM LANGUAGE | FORTINET'S PROPOSED CONSTRUCTION | PAN'S PROPOSED CONSTRUCTION |
|---|---|---|
| "the prescribed protocol" | A recognized protocol. | One of the set of protocols that have been pre-identified as potentially containing content desired to be detected. |

It is undisputed that to "prescribe" means to set down as a rule. Thus, a prescribed protocol is a protocol that has been set down by rule. The court declines to construe "prescribed" as recognized or pre-identified because such a construction would be over-inclusive. Although a prescribed protocol has necessarily been recognized and pre-identified, not all recognized or pre-identified protocols need be prescribed.

It appears that the real dispute is not whether "prescribed" means recognized or pre-identified. Rather, the heart of the dispute lies in whether "prescribed," as used in the '990 Patent, refers to having set down a rule regarding a protocol *because the protocol could contain content desired to be detected*, as PAN contends, or more broadly refers to having set down a rule regarding a protocol, regardless of the reason for the rule, as argued by Fortinet. In other words, PAN construes "a prescribed protocol of network traffic content that could contain content desired to be detected" as meaning a protocol of network traffic content that is prescribed *because* it could contain content desired to be detected. Fortinet, on the other hand, construes the claim language to mean a protocol of network traffic content that is prescribed *and* that could contain content desired to be detected. The court agrees with Fortinet's construction.

Since to "prescribe" simply means to set down as a rule, there is nothing in the claim language to suggest that the claims require a protocol to be set down by rule because it could contain content desired to be detected. Furthermore, the specification, which is the "single best guide to the meaning of the disputed term," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005), confirms that a prescribed protocol need not be a protocol set down by rule because it could contain content desired to be detected. In supporting its proposed construction, PAN quotes from a portion of the specification, which states, "In the illustrated embodiments, protocol differentiator 704 is configured to pass safe traffic content to packet processing module 706, and unsafe traffic content to

stack 708." '990 Patent 8:48-51. This statement, standing alone, might suggest that the only contemplated reason for setting down a rule regarding a protocol would be because it could contain content desired to be detected. However, immediately following this statement, the specification goes on to explain:

> In alternative embodiments, protocol differentiator 704 is configured to pass potentially undesirable network traffic content to both packet processing module 706 and stack 708. In such case, network traffic content that can be screened by conventional content filtering techniques may be passed to packet processing module 706, while other traffic content, such as those that may contain virus or worms, may be passed to stack 708. In some embodiments of the invention, processor 702 may be programmable or configurable such that a user can prescribe certain types of network traffic content to be passed to packet processing module 706 or to stack 708.

'990 Patent 8: 51-62. By disclosing embodiments of the invention where rules regarding network traffic are based on whether the traffic can be screened by conventional techniques, rather than based on whether the traffic may contain potentially undesirable content, the specification makes clear that a protocol may be set down by rule for reasons other than the fact that it could contain content desired to be detected. The fact that users may program or configure the processor to set their own rules for prescribing network traffic content further bolsters Fortinet's argument that a protocol may be set down by rule for any number of reasons. Accordingly, the court finds that "a prescribed protocol of network traffic content that could contain content desired to be detected" is a protocol of network traffic content that has been set down by rule and that could contain content desired to be detected.

As for the second disputed claim term in the '990 Patent, "the prescribed protocol" does not refer generally to any prescribed protocol. In the context of the claims, it is clear that "the prescribed protocol" refers specifically to the earlier claim language describing "a prescribed protocol of network traffic content that could contain content desired to be detected." *See, e.g.,* '990 Patent 23:27-35. Hence, the court construes "the prescribed protocol" as the protocol of network traffic content that has been set down by rule and that could contain content desired to be detected.

### III. NON-INFRINGEMENT

Each of the asserted claims in the '990 Patent requires the use of two processors, with the first processor comparing a protocol of the network traffic content with a prescribed protocol to

United States District Court
For the Northern District of California

1  determine whether there is a match and, based on this determination, either forwarding the network

2  traffic content to a second processor for content inspection or performing filtering of the network

3  traffic on its own. *See* '990 Patent 23:24-26:45.

4  ███████████████████████████████████████████████████████████

5  ████████████████████████████████████ Fortinet has set forth two theories of infringement.

6  Under one theory, the prescribed protocols are TCP or UDP, which are transport layer protocols.

7  Under another theory, the prescribed protocol is IP, a network layer protocol. The court considers

8  each theory of infringement.

9  **A.  TCP or UDP as the Prescribed Protocol**

10  The asserted claims require comparing a protocol of the network traffic content with a

11  prescribed protocol to determine whether there is a match.[3] '990 Patent 23:27-31, 24:17-21. Fortinet

12  contends that the accused products meet this limitation because ████████████████████████████

13  ██████████████████████████████████████████████████████████

14  PAN argues that the accused products fail to meet this limitation because "malformed TCP or UDP

15  packets" lack a legitimate protocol and therefore cannot be compared against a prescribed protocol

16  to determine whether there is a match.

17  A data packet has seven protocol layers: the physical layer (L1), data link layer (L2),

18  network layer (L3), transport layer (L4), session layer (L5), presentation layer (L6), and application

19  layer (L7). Dkt. No. 146 ¶ 17. Each layer has a header that contains information identifying the

20  protocol of the next higher layer. *Id.* ¶ 19. However, packets are sometimes malformed, which can

21  occur because part of a packet is not transmitted or part of a header has been changed. *See id.* Such

22  malformed packets are discarded because the information in the packet cannot be used. *See id.*

23  In determining what protocols have been used to enclose a data packet, firewalls not only look at

24  header information but also inspect the packet to see if it conforms with the required packet format

25  for a particular protocol. *See id.* Thus, a packet that initially appears to be of the TCP or UDP

26

27  [3] The claims require "determining whether a protocol of the network traffic content matches with a prescribed protocol of network traffic content . . . by comparing a type of the network traffic content with a prescribed type." '990 Patent 24:17-21. The parties agree that "type," as used in the '990

28  Patent, means "protocol" because the two words are used interchangeably throughout the patent.

ORDER CONSTRUING CLAIMS OF THE '990 PATENT, GRANTING PAN'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT, AND DENYING PAN'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY —No. C-09-00036 RMW CCL

United States District Court
For the Northern District of California

1   protocol based on header information may actually fail to conform to the required packet format for

2   the TCP or UDP protocol and thus be discarded.  Fortinet refers to these as "malformed TCP or UDP

3   packets." These so-called "malformed TCP or UDP packets" are not legitimate packets of the TCP

4   or UDP protocol. *See id.*

5   ████████████████████████████████████████████████

6   ██████████████████████████████████████████ *See* Dkt.

7   No. 144 ("Zuk Dep.") 166:25-168:7.  Because these packets are malformed, they lack a transport

8   layer protocol. *See* Dkt. No. 146 ¶ 19.  After all, by definition, a "malformed TCP or UDP packet"

9   fails to conform to the required packet format for the TCP or UDP protocol. █████████████

10  ██████████████████████████████████████████████

11  ████████████████████████████████ Therefore, the

12  accused products do not compare a protocol of the network traffic content with a prescribed protocol

13  to determine whether there is a match and thus do not infringe any of the asserted claims under this

14  theory of infringement.

15      **B.      IP as the Prescribed Protocol**

16          Under Fortinet's other theory of infringement, IP Ethernet packets match the prescribed

17  protocol, while non-IP Ethernet packets do not match the prescribed protocol.  PAN argues that the

18  accused products do not infringe the '990 Patent under this theory because ██████████████

19  ██████████████████████████

20          The asserted claims require the first processor to "perform filtering of the network traffic if

21  the type of the network traffic content does not match the prescribed type." '990 Patent 23:35-37.

22  "Filtering" was not one of the terms initially chosen for claim construction.  However, because the

23  meaning of "filtering," as used in the '990 Patent, is central to the parties' dispute over non-

24  infringement, the court permitted the parties to submit supplemental briefing on this issue.  The

25  supplemental briefing made clear that, although the parties disagree regarding the scope of actions

26  that could constitute "filtering,"[4] they agree that "filtering" means to separate data, signals, or

27  ─────────────────────────────

28  [4] PAN argues that "filtering" is limited to allowing or blocking content, while Fortinet contends that
    "filtering" includes allowing, blocking, or modifying content.

material in accordance with specified criteria. *See* Dkt. No. 191 at 5. In other words, "filtering" requires treating different kinds of content differently based on some specified criteria and does not include treating all content the same way. Because this agreed understanding of "filtering" is dispositive on the question of non-infringement, the court need not address the finer points of disagreement and simply adopts this agreed-upon definition.



the accused products also do not infringe any of the asserted claims under this theory of infringement.[5]

---

[5] In opposing PAN's motion for summary judgment, Fortinet did not argue that the accused products infringed under the doctrine of equivalents. Neither its original infringement contentions, nor the proposed amendments, adequately assert the doctrine of equivalents.

**C.   PA-500 Series Firewall**

None of the accused products infringe the asserted claims of the '990 Patent for the reasons explained above.  The PA-500 Series Firewall does not infringe for an additional reason: it does not meet the two processor limitation. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████████████████ *See* Zuk Dep. 41:14-21.  However, this is insufficient to meet the requirements of the '990 Patent because the second processor must be configured to "determine whether the network traffic content contains the content desired to be detected."  '990 Patent 23:39-41, 24:28-30. ████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████ *See* Zuk Dep. 40:12-41:12.  Therefore, the PA-500 Series Firewall does not infringe the asserted claims of the '990 Patent for this additional reason.

## IV.  INVALIDITY

PAN seeks summary judgment that the asserted claims of the '990 Patent are invalid as anticipated by the Nortel Alteon Switched Firewall ("Nortel ASF").  The Nortel ASF is a firewall that consists of a Firewall Accelerator and a Firewall Director.  *See* Dkt. No. 68 Ex. A at 17.  PAN alleges that the Nortel ASF contains each and every limitation of the asserted claims of the '990 Patent in the following manner: The Accelerator is the first processor, and the Director is the second processor.  The Accelerator receives network traffic content, determines the protocol of that network traffic, and applies a set of rules to determine what to do with the network traffic content based on the protocol of the network traffic.  *See* Dkt. No. 65 ¶¶ 38-39.  Based on those rules, if the protocol of the network traffic is prescribed, the Accelerator uses a fiber optic Ethernet connection to store the network traffic content in memory at the Director.  *See id.* ¶ 55.  If the protocol of the network

United States District Court
For the Northern District of California

traffic is not prescribed, the Accelerator instead filters the network traffic itself. *See* Dkt. No. 68 Ex.
A at 145, 149. According to PAN, the Director inspects network traffic content received from the
Accelerator to determine whether it contains undesirable content. *See* Dkt. No. 65 ¶ 58.

Fortinet argues that the asserted claims of the '990 Patent are not anticipated by the Nortel
ASF because: (1) the Nortel ASF does not qualify as prior art, and (2) the Firewall Director (the
alleged second processor in the Nortel ASF) does not perform content inspection.

**A.    Prior Art**

The '990 Patent claims priority to July 19, 2002, the filing date of its earliest provisional
application. Fortinet does not claim that the invention was conceived and reduced to practice any
earlier than this date. PAN contends that the Nortel ASF qualifies as prior art because it had been
used prior to July 19, 2002.

35 U.S.C. § 102(a) provides that "[a] person shall be entitled to a patent unless – (a) the
invention was known or used by others in this country . . . before the invention thereof by the
applicant for the patent." In order for the prior use to invalidate a patent, the use must be "accessible
to the public." *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998).
"[A]ny use of the claimed invention by a person other than the inventor who is under no limitation,
restriction, or obligation of secrecy to the inventor" qualifies as a use that is accessible to the public.
*New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1297 (Fed. Cir. 2002).

It is undisputed that the Nortel ASF was a commercial product sold by Nortel in late 2001
and that Dr. Lavian bought this product in early 2002 and gave a presentation about it in May 2002.
*See* Dkt. No. 65 ¶ 30; Dkt. No. 109 Ex. C ("Lavian Dep.") 54:14-19. Because Dr. Lavian used the
Nortel ASF in a laboratory setting, *see* Dkt. No. 65 ¶ 24, Fortinet argues that Dr. Lavian's use of the
Nortel ASF was experimental. However, "[e]xperimental use, which means perfecting or
completing an invention to the point of determining that it will work for its intended purpose, ends
with an actual reduction to practice." *RCA Corp. v. Data General Corp.*, 887 F.2d 1056, 1061 (Fed.
Cir. 1989). Accordingly, "experimental use cannot negate a public use when it is shown that the
invention was reduced to practice before the experimental use." *In re Omeprazole Patent Litig.*, 536
F.3d 1361, 1372 (Fed. Cir. 2008). As a commercial product, the Nortel ASF had clearly been

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  reduced to practice by the time Dr. Lavian purchased it. Thus, Dr. Lavian's use of the Nortel ASF

2  was not an experimental use and constitutes a use that is accessible to the public. Since this use

3  occurred prior to the claimed invention date of July 19, 2002, the Nortel ASF qualifies as prior art

4  under 35 U.S.C. § 102(a).

5      **B.**    **Content Inspection**

6        The '990 Patent requires that the second processor be "configured to determine whether the

7  network traffic content contains the content desired to be detected if the type of the network traffic

8  content matches the prescribed type." '990 Patent 23:39-43, 24:28-31. The parties agree that in

9  order for the Nortel ASF to meet this limitation, the Director (the second processor) must inspect

10 network traffic received from the Accelerator (the first processor). According to PAN, Security

11 Servers, which are software entities on the Director, perform content inspection by running Check

12 Point Firewall-1 software to determine whether network traffic contains undesirable content.

13 Fortinet argues that the Security Servers on the Director do not actually perform content inspection

14 themselves but rather pass network traffic on to third party servers on another processor for content

15 inspection.

16       It is undisputed that some content inspection, such as anti-virus screening, may be offloaded

17 to a Content Vectoring Server, which exists on a separate processor, not on the Director. There is a

18 factual dispute, however, as to whether the Security Servers on the Director ever perform any

19 content inspection on their own. Having reviewed the evidence in the record, the court concludes

20 that this dispute raises a genuine issue of material fact.

21       Various Check Point documents state that the Security Servers on the Director implement

22 content security or are used to provide content security. *See, e.g.,* Dkt. No. 65 Ex. J at PAN 008903

23 ("FireWall-1 provides content security for HTTP, SMTP, and FTP connections using the FireWall-1

24 Security Servers."); Dkt. No. 109 Ex. D at 12 ("Content security is defined using Resource objects

25 and implemented by the Security Servers."). However, these statements fail to clarify whether the

26 Security Servers actually perform the content inspection themselves or simply "implement content

27 security" by passing network traffic on to third party servers for content inspection. The "Check

28 Point FireWall-1 Technical Overview" provides some explanation of the role that Security Servers

play in its description of how a Resource object (which defines the prescribed protocol) works in conjunction with Security Servers:

> A Resource object defines a group of entities accessed by a specific protocol. . . . When a connection matches a rule with a Resource, the FireWall-1 Inspection Module diverts the connection to the appropriate Security Server.
>
> *The Security Server can then query a third-party server, such as a URL filtering server, which performs the required content inspection.* FireWall-1 processes the original connection depending on the reply from the server and the action in the rule.

Dkt. No. 109 Ex. D at 12 (emphasis added). While this explanation does not conclusively preclude the possibility that Security Servers sometimes perform content inspection on their own, it suggests that the role Security Servers play in implementing content security is to query third-party servers, which actually perform the content inspection.

PAN points to the following statement in a Check Point press release as evidence that the Security Servers on the Director do not always rely on third party servers to conduct content inspection: "Check Point FireWall-1 3.0's content security features are comprised of the Content Vectoring Protocol (CVP), an open protocol for integrating external and third-party content inspection programs, *plus integrated content inspection capabilities for anti-virus protection, URL screening, and Java security.*" Dkt. No. 109 Ex. E at 1-2 (emphasis added). It remains unclear, however, whether the "integrated content inspection capabilities" occur on the Security Servers on the Director. Another Check Point document states that URL screening occurs "using third party URL Filtering Protocol (UFP) servers." Dkt. No. 109 Ex. D at 13. Thus, at least one such "integrated" capability appears to rely on third party servers for content inspection.

The Check Point documents in the record do not conclusively rule out the possibility that Security Servers may perform some type of content inspection on their own. In fact, one technical document suggests that some Java security may be implemented without third party servers since it lists various Java security capabilities followed by the statement that "FireWall-1 *also* integrates Java screening capabilities of third-party applications." *Id.* at 13. However, "[p]atents enjoy a presumption of validity, 35 U.S.C. § 282 (2006), and a party seeking to invalidate a patent must overcome this presumption by facts supported by clear and convincing evidence." *Iovate Health Sciences, Inc. v. Bio-Engineered Supplements & Nutrition, Inc.,* 586 F.3d 1376, 1380 (Fed. Cir.

ORDER CONSTRUING CLAIMS OF THE '990 PATENT, GRANTING PAN'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT, AND DENYING PAN'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY —No. C-09-00036 RMW CCL

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    2009).  PAN has not met its burden of establishing that the Director performs content inspection by

2    clear and convincing evidence.  The court therefore denies its motion for summary judgment of

3    invalidity.

### V.  ORDER

5        For the foregoing reasons, the court:

6        1.        Construes the claim language as set forth below:

| CLAIM LANGUAGE | CONSTRUCTION |
| --- | --- |
| "stack" | Memory of temporary storage. |
| "a prescribed protocol of network traffic content that could contain content desired to be detected" | A protocol that has been set down by rule and that could contain content desired to be detected. |
| "the prescribed protocol" | The protocol that has been set down by rule and that could contain content desired to be detected. |
| "filtering" | Separating data, signals, or material in accordance with specified criteria. |

15   2.        Grants PAN's motion for summary adjudication that the accused products do not

16            infringe the asserted claims of the '990 Patent; and

17   3.        Denies PAN's motion for summary adjudication that the '990 Patent is invalid.

20   DATED:        11/8/10                                    _Ronald M Whyte_____

                                                            RONALD M. WHYTE
                                                            United States District Judge